IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DONTAY CARTER-EL            *

Plaintiff            *

v            *        Civil Action No.  JFM-14-2264

ASST. WARDEN DENISE GELSINGER, *et al**

Defendants            *
           ***

**MEMORANDUM**

Pending in the above-entitled civil rights action is defendants' motion to dismiss or for summary judgment (ECF 16), which is opposed by plaintiff (ECF 21).  Also pending is plaintiff's motion for temporary injunction (ECF 22) and defendants' response thereto (ECF 23).  The court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2014).

**Background**

Plaintiff, an inmate confined at Western Correctional Institution (WCI), alleges that on July 3, 2014, defendants placed him on administrative segregation and confiscated all of his property, including legal papers.  He states he had a court date on July 15, 2014, and was required to bring all "photos, documents and other evidence" to the hearing.  ECF 1 at p. 3.  Despite defendants' knowledge of plaintiff's court date, plaintiff claims they refused to return his paper work.  Plaintiff further alleges that defendants knew he had numerous legal deadlines.

Plaintiff claims that a "mandamus order" was issued against the warden of WCI in September of 2013, by Judge Finan of the Circuit Court for Alleghany County in September of 2013.  Plaintiff does not state what the order required, but claims he has won and argued more meritorious grievance hearings than any other inmate at WCI or North Branch Correctional Institution (NBCI).  He asserts that the confiscation of his legal papers is retaliation for his

successful litigation of claims and that he will suffer irreparable harm due to the confiscation of his paperwork. Plaintiff does not describe the nature of the pending litigation. ECF 1 at p. 4.

Defendants assert that plaintiff's paperwork was not confiscated by Division of Correction staff; rather, it was seized by the Baltimore City Police Department as a part of an investigation into an allegation made by plaintiff against another inmate, Eric Simmons. Specifically, plaintiff sent a letter to the Baltimore City Police Department stating that Simmons was conspiring with a woman named Tesha Forrest to murder a specific police officer. In response to the letter, two Baltimore City Police detectives came to WCI on July 28, 2014, to investigate the allegations. The detectives interviewed plaintiff and Simmons as part of the investigation. In addition, the detectives sought to review documents in plaintiff's possession and prison officials permitted the detectives to take the documents for review to assist in the conspiracy investigation. ECF 16 at Ex. 2 and 3. Officer Bradley Butler states under oath that he did not place plaintiff on administrative segregation as alleged, nor did he confiscate his property. *Id*. at Ex. 3.

Defendants further assert that the volume of documents taken, two grocery size bags full, made mailing the paperwork back to plaintiff not feasible. They further explain that the detectives have completed review of the documents and had plans to return the documents to plaintiff personally. ECF 16 at Ex. 2.

In his opposition response, plaintiff states that the instant complaint concerns the confiscation of his property from July 3, 2014 through July 17, 2014, and the documents taken on July 28, 2014, are irrelevant to this case. ECF 21. Indeed, plaintiff's complaint was filed prior to July 28, 2014. ECF 1. Plaintiff further states he never sent a letter to the Baltimore City Police Department and points out the absence of any such letter in the record of this case. ECF

21-1 at p. 4. He asserts that he received documents from the District Court for Baltimore City on July 8, 2014, after he had already been assigned to administrative segregation, indicating that Captain Butler had advised Teesha Forrest, a former friend to plaintiff, to seek a restraining order against him so that staff at WCI could further assist her. *Id*. at p. 3. Plaintiff further states that at every administrative segregation review hearing he was told he would remain on that status until Butler said he could be removed. *Id*. at pp. 3 – 4. Plaintiff's property was returned to him on July 17, 2014, and he asserts there was never any explanation or justification stated for removing his paperwork from his possession for two weeks. *Id*. at p. 4.

## Injunctive Relief

A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). To obtain a preliminary injunction, a movant must demonstrate: 1) that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in his favor; and 4) that an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc*, 555 U.S. 7, 129 S.Ct. 365, 374 (2008); *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam).

In his motion for temporary restraining order, plaintiff asserts he was placed on disciplinary segregation without being charged with a rule violation in retaliation for filing the instant case. ECF 22. He claims that on December 11, 2014, he was attempting "to access the library to obtain the necessary copies of the exhibits and documents associated with his response to defendants' motion to dismiss this complaint," when Officer Erdos refused to allow him to go to the library. *Id*. Plaintiff claims that ten days later Erdos came to his cell and ordered him to

pack up his things because he was being placed on disciplinary segregation. He further alleges that defendant Gelsinger has placed restrictions on library privileges for inmates assigned to the tier where plaintiff was moved. Specifically, access to legal materials are limited to use of the LASI (Library Assistance to State Institutions) process. *Id*. Plaintiff seeks a temporary restraining order prohibiting prison officials from denying him physical access to the library. *Id*.

In defendants' response to plaintiff's motion, they explain that on December 23, 2014, Lt. Jeffrey Shimko intercepted a large envelope plaintiff had marked as legal mail and attempted to mail out of the prison. Shimko discovered that the envelope did not contain legal mail, but instead contained instructions directing individuals to smuggle cocaine, synthetic marijuana, and prescriptions drugs back into the prison using hidden pockets in the envelope. ECF 23 at Ex. 1. Defendants additionally point out that plaintiff had already submitted his response in opposition in the instant case. *See* ECF 21.

The motion for temporary restraining order shall be denied. Additionally, plaintiff is cautioned that false swearing in court documents will not be tolerated. The motion, supported by plaintiff's declaration under oath, is not only frivolous, it is based on fabricated allegations of retaliation and retribution. It is clear from the pleadings filed by plaintiff that he is highly intelligent and the reason for his placement on disciplinary segregation was in fact known to him when he filed the motion for temporary restraining order.

**Standard of Review**

In reviewing the complaint in light of a motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005); *Ibarra v. United States,* 120

F.3d 472, 473 (4th Cir. 1997); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 677 - 78 (2009) (quoting *Twombly*, 550 U.S. at 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563, citing *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d, 247, 251 (7th Cir. 1994) (once a

claim for relief has been stated, a plaintiff 'receives the benefit of imagination, so long as the hypotheses are consistent with the complaint').

Rule 56(a) of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotations omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Exhaustion of Administrative Remedies**

The Prisoner Litigation Reform Act provides, in pertinent part:

> (a) Applicability of administrative remedies
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e.

As a prisoner, plaintiff is subject to the strict requirements of the exhaustion provisions. It is of no consequence that plaintiff is aggrieved by a single occurrence, as opposed to a general conditions of confinement claim. *See Porter v. Nussle*, 534 U.S. 516, 528 (2002) (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). A claim which has not been exhausted may not be considered by this court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007).

Administrative remedies must, however, be available to the prisoner and this court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

7

*Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008).

Thus, plaintiff's claims must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003). The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 286 F. Supp. 2d at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth*, 532 U.S. at 735 (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F. 3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Defendants assert plaintiff did not exhaust administrative remedies with respect to the claim raised. ECF 16. Specifically, defendants assert that plaintiff "never filed a grievance in connection with this case regarding the taking of his property or that the prison or any of its employees were retaliating against him." ECF 16-1 at p. 9. Defendants rely upon an affidavit from the executive director of the IGO, Scott Oakley, which states in pertinent part that:

> IGO No. 20141510 was filed on July 16, 2014, and involved a complaint by inmate Carter that he had been improperly confined in Administrative Segregation at the Western Correctional Institution ("WCI") on and after July 3, 2014. This grievance was administratively dismissed by hy the IGO on September 24, 2014, for inmate Carter's failure to state a claim upon which administrative relief could and should be granted. There is no indication in the

8

> file of any subsequent Maryland Circuit Court proceeding for judicial review of this final administrative decision.

ECF 16 at Ex. 4, pp. 1 – 2.

Plaintiff refutes this assertion and provides in support copies of administrative remedy procedure requests (ARP) wherein he raised the precise issue asserted in this complaint and appealed the warden's denial of his claim to the Commissioner of Correction. ECF 21 at Ex. 4. Indeed, the Commissioner found plaintiff's claim partially meritorious in that plaintiff "did not have access to [his] property from 7/3/14 to 7/16/14," but denied as to the relief sought because plaintiff had not provided any evidence to substantiate his claim that denial of his property was the reason he lost a claim in court. *Id*. at p. 3. This court notes, however, that the Commissioner's response is dated October 8, 2014, or approximately two weeks after the IGO dismissed his grievance. *Id*.

There exists a genuine dispute of material fact regarding plaintiff's exhaustion of administrative remedies which forecloses the dismissal of the complaint for failure to exhaust. The merits of the claim shall be addressed below.

**Analysis**

Access to Courts

Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U. S. 817, 821 (1977). However:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996).

9

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997), quoting *Lewis*, 518 U.S. at 355. "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349. Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Id*. at 352-352.

Defendants assert that plaintiff's complaint fails to state a constitutional claim because he has not provided evidence of actual injury resulting from the deprivation of his property. ECF 16. Plaintiff provides two orders from the Circuit Court for Allegany County as evidence of an actual injury to his ability to litigate a claim. ECF 21 at Ex. 3, pp. 2 and 3. Both orders were issued in cases seeking judicial review of the decision of the Secretary of Public Saftey and Correctional Services. The first is dated July 15, 2014, and dismisses the petition for failing to pay the filing fee within thirty days of an order dated June 13, 2014, requiring him to do so. *Id*. at p. 2. In addition, the order states that plaintiff had failed to provide "proof necessary to demonstrate that [he had] fully exhausted administrative remedies available." *Id*. The second order, which is dated July 30, 2014, denies plaintiff's motion to alter or amend as untimely filed. *Id*. at p. 3. The IGO case numbers referenced by the court, IGO No. 20140350 and 20132122, are not referenced in the declaration under oath provided by executive director Oakley. ECF 16 at Ex. 4. Plaintiff provides no explanation regarding the substance of the claims asserted in either case.

Without evidence of the nature of the claim asserted, an actual injury is not established. It is simply not enough to establish that filing deadlines were missed. A prisoner claiming he was denied access to the courts must ultimately prove he suffered an actual injury by showing that the defendant's acts hindered his ability to pursue a nonfrivolous legal claim. Conclusory allegations are not sufficient in this regard. *See Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006) (denying access to court claim based on allegation that petition for a writ of certiorari had, for unspecified reasons, been dismissed and where plaintiff did not even mention the point on appeal). The right of access to the courts is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Defendants are entitled to summary judgment on this claim.

<u>Retaliation</u>

In order to prevail on a claim of retaliation, plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). It is unclear how much of a showing of adversity must be made in order to survive a motion for summary judgment. *Compare Burton v. Livingston*, 791 F.2d 97, 100-101 (8th Cir. 1986) ("complaint that a prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with threats of death" sufficient to state claim). "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

> Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. *Perry v. Sindermann,* 408 U.S. 593, 597 (1972). Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim.

*ACLU of Maryland, Inc. v. Wicomico County*, Md. 999 F.2d 780, 785 (4th Cir. 1993).

"In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994).

Plaintiff's claim is that he was assigned to administrative segregation on July 3, 2014, and his property was confiscated for two weeks because he has been successful in numerous administrative hearings and obtained a mandamus order from the Circuit Court for Allegany County. He also claims that Bishop, the officer who assigned him to administrative segregation, is a defendant in another pending civil action in this court. Defendants have failed to respond to the allegation raised and focus instead on the later actions of the Baltimore City Police, which have no bearing on the claims asserted. ECF 16.

Defendants provide records regarding plaintiff's housing assignment which confirms he was assigned to administrative segregation on July 3, 2014. *Id*. at Ex. 1, p. 9. There is nothing provided by defendants regarding the rationale for that assignment; however, plaintiff asserted in an ARP that he was placed on administrative segregation "over some 'threats' made to a former friend of mine." ECF 21 at Ex. 5, pp. 2 – 3. He further explains that he went to court regarding the application for restraining order by the former friend in question and that her allegations were proved false. *Id*. Plaintiff took issue with the fact he was put on administrative segregation

before he was served with charging papers for the peace order and disputed allegations he was involved in attempts to smuggle contraband into the prison. *Id*.

The allegations asserted against plaintiff, whether they were later proven false or not, constitute a legitimate, non-retaliatory reason for his assignment to administrative segregation. Additionally, confiscation of his property in light of the serious allegations against him appears to address a legitimate security concern. A search of plaintiff's property to determine if it contained evidence to support the claims he was threatening someone or engaging in illegal conduct was a necessary precaution and a legitimate discharge of correctional officials' duty to ensure the public's safety. In light of those legitimate security concerns, plaintiff's retaliation claim fails, and defendants are entitled to summary judgment on the claim.

A separate order follows.


__March 23, 2015__                           _____/s/_____
Date                                                        J. Frederick Motz
                                                                United States District Judge